LE MARS MUTUAL INS. CO., INC., Respondent v. PREHN, Appellant

(238 N.W.2d 274)

(File No. 11480. Opinion filed December 31, 1975)

T. F. Martin, McCann, Martin & Mickelson, P. C., Brookings, for defendant and appellant.

Merle A. Johnson, Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and respondent.

WINANS, Justice.

This is a review of an action pursuant to our declaratory judgment law, SDCL 21-24, to determine the rights arising from an insurance contract as between the Appellant, the insured, and the Respondent, the insurer. All the facts in this matter were presented to the trial court by stipulation. Appellant appeals from a judgment filed with the court May 10, 1974, in favor of the Respondent insurance company.

Mrs. Clinton Prehn was killed in an automobile accident on January 7, 1973, in Stanley County. At the time of the accident Appellant Clinton Prehn and his wife had been for several years insured by LeMars Mutual Insurance Co., Inc., under its family combination automobile policy, which policy included an accidental death endorsement for $10,000. This coverage was provided to Appellant in virtue of the payment of an additional premium. In due course Respondent insurance company paid to Appellant the $10,000 benefit as the result of his wife's death. At the time of her death Hazel Prehn was a passenger in an automobile operated by Mary Willemssen. Coincidentally the Willemssen vehicle was also insured by Respondent company. Appellant commenced an action against the two Willemssen

estates involved and reached a settlement for wrongful death in excess of $10,000.

Respondent settled with Appellant and then attempted to claim subrogation rights under the terms of insured's policy which provided:

"1. *Coverage A—Death Benefit:* To pay the principal sum of $10,000 in the event of the death of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from an automobile, or through being struck by a motor vehicle, provided the death shall occur within ninety days after the date of the accident.

\*  \*  \*  \*  \*  \*

8. *Subrogation:* In the event of any payment under this endorsement, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Respondent sought a declaratory judgment in the circuit court to determine the rights of the parties and the court found in Respondent's favor. There is no dispute concerning the fact that the policy in question was in force at the time and that the subrogation clause was a part of the policy. While counsel for Appellant has raised half a dozen different issues we think that the question of the policy's conformity with the terms of our state statutes on the subject is dispositive and we therefore decide the case on that basis alone and reverse the ruling of the lower court.

SDCL 58-23-7 directs that:

"No application for an automobile liability policy may be taken with respect to any automobile registered or principally garaged in this state unless the supplemental

coverages set forth in SDCL 58-23-8 are offered to the named insured who shall have the right to reject in writing all or any one or more of such coverages."

SDCL 58-23-8 says in part:

"Supplemental insurance coverages shall as a minimum include:

(1) accidental death benefits of at least ten thousand dollars payable upon the loss of life of the named insured which shall result directly from and independently of all other causes from bodily injury, other than sickness or disease or death resulting therefrom, caused by accident sustained by the named insured while occupying an automobile, or entering or alighting therefrom, or through being struck by a motor vehicle while a pedestrian, if death occurs within ninety days of the accident;",

In *Westphal v. Amco Insurance Company*, 1973, 87 S.D. 404, 209 N.W.2d 555, we dealt with another provision of our insurance law concerning uninsured motorist coverage limited by other insurance. In that case we spoke with approval of *Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich.*, 1972, 388 Mich. 464, 201 N.W.2d 786. *Blakeslee* turned on a Michigan statute which provided:

"No . . . policy . . . shall be delivered . . . unless coverage is provided therein . . . for the protection of persons insured thereunder . . . in limits . . . set forth in [the Motor Vehicle Code] . . . unless the named insured rejects such coverage in writing . . ." 1965 P.A. 388; M.C.L.A. § 500.3010; M.S.A. § 24.13010.

In other words, the Michigan law had a mandatory provision that the insurance company tendering the policy offer the additional provision. At the same time the potential insured was to be given an option to reject such coverage in writing. The Michigan Court stated that "[t]he language of the statute is plain, unambiguous and *mandatory*. It unequivocally requires that 'No . . . policy . . . be delivered . . . unless coverage is provided

therein.' Stated in the affirmative, *every* policy *must have* this coverage. Only after the mandatory offer is made can the insured reject it in writing." We agree with the Court in *Blakeslee* when it says that "[i]t would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised 'other insurance' limitation. Nothing could more clearly defeat the intention of the legislature." We have looked at the plain language of the statutes in question as set out supra and we find that they require that as a minimum the insurance company must offer the life insurance provision with no strings attached, at least to the $10,000 amount. This Respondent has not done. Rather, what it gave with one hand (and what the insured pay to receive) it has attempted to take away with another. In short, the coverage provided to the extent that the subrogation clause should apply to the first $10,000 of recovery was less than what our legislature has required. The insurance company has received payments from the insured for a benefit which it has done its best not to provide. This provision does not conform to the fundamental requisites of our law.

We are convinced that the accidental death benefits mandated by section (1) of SDCL 58-23-8 are not to be equated with the indemnity for medical expenses of at least two thousand dollars required by section (3) of the same statute with regard to our decision on the validity of subrogation clauses. A minimum offering of a ten thousand dollar lump sum payment upon death resulting from a motor vehicle accident is nothing less than the offering of a life insurance policy contingent upon death by accident. It is not a form of indemnification. It is life insurance pure and simple and we perceive a significant difference between this kind of coverage and a policy of indemnification. The legislature had directed that this form of life insurance be offered and the insured is entitled to collect and retain it even if his estate should also be able to collect accidental death benefits on his life insurance policy and also the benefits that are automatic with certain automobile club policies, health insurance policies, etc. in the form of outright payments of several thousand dollars upon an accidental death or a motor vehicle related accidental death.

On the other hand, our legislature in SDCL 58-23-8(2) and (3) has required minimum coverages which it has labeled in each instance to be an "indemnity" and this it did not do in SDCL 58-23-8(1). An indemnity is not to be an outright lump sum grant to be paid merely upon the certification of disability or medical expenses due to an auto accident. Rather, it is coverage to make whole an individual who has suffered a loss due to an auto accident to the extent that the loss falls within the policy's limits. Whether or not the insurer later recovers the monies paid the insured under a policy of indemnification through subrogation should matter little to the insured as long as he has been made whole through the operation of the supplemental coverage indemnity for which he has paid an extra premium. Subrogation is therefore not inimical to an offering as a minimum of an indemnity. It is, however, inconsistent with an offering as a minimum of a ten thousand dollar accidental death benefit.

For the reason that the subrogation clause of the insurance contract in question is of no force LeMars can make no claim in this regard upon its insured. Appellant has a right to both his $10,000 accidental death benefit under his auto insurance policy and to the settlement coming from the wrongful death action. The judgment of the trial court is reversed.

DUNN, C. J., and DOYLE and COLER, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

I would affirm.

When the legislature desires that there shall be no reduction in an insured's total recovery, it expresses that intention quite clearly, as Justices Doyle and Winans point out in their discussion of SDCL 58-23-8(2) and (3) in *Schuldt v. State Farm Mutual Automobile Ins. Co.*, 89 S.D. 687, 238 N.W.2d 270, decided this day.

There being no statutory prohibition against subrogation in SDCL 58-23-8(1), we must look elsewhere. I do not find the answer in the distinction, however valid it may be for other

purposes, between the concept of indemnity and that of life insurance. As I read the statutes, the intention of the legislature in enacting SDCL 58-23-7 and 58-23-8 was to guarantee that every named insured in an automobile liability policy should be afforded the minimum coverages therein set forth if he desires to avail himself of such coverages. If he does not reject such coverages, he or his beneficiary will be assured of recovering at least the amounts specified in SDCL 58-23-8 if events render him or his beneficiary eligible to recover under such coverages. Once payment has been made within the limits set forth in SDCL 58-23-8(1) and (3), the legislative objective has been accomplished. So long as the insured or his beneficiary retains the amount he would have been entitled to had there been no recovery from a third party, an insurer does no violence to legislative intent by recouping some or all of the payments made pursuant to accidental death benefits and medical payments provisions of the policy.