# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Zane L. Metz Jr., Zane L. Metz III,**
**Hollie L. Metz and Z.L. Metz Homes, LLC,**
**Defendants Below, Petitioners**

**vs.)  No. 19-0131** (Cabell County 15-C-742)

**The First State Bank,**
**Plaintiff Below, Respondent**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Zane L. Metz, Jr., Zane L. Metz III, Hollie L. Metz, and Z.L. Metz Homes, LLC ("the Metzes"), by counsel Richard Neely, appeal the order of the Circuit Court of Cabell County, entered on January 18, 2019, entering judgment in favor of Respondent The First State Bank ("the bank") after a bench trial on respondent's breach of contract claim arising from petitioners' default on the obligations under two loan agreements. Respondent appears by counsel Daniel T. Yon and Todd A. Biddle.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The bank filed a complaint in the Circuit Court of Cabell County in 2015, asserting that the Metzes defaulted on two loans, one originating with a $2 million line of credit that was secured by several properties in North Carolina, with a maturity date of October 2, 2015 (Loan 1067), and one with a principal amount of $441,608.80 that was secured by several lots in Huntersville, North Carolina, with a maturity date of September 1, 2015 (Loan 2401). The circuit court conducted a bench trial and entered its judgment in an order dated January 18, 2019. On appeal, the Metzes assign error to the circuit court's order in three respects. They argue, first, that the court erred in finding that Loan 1067 was a "hard note" reflecting a debt for a sum certain and, thus, not requiring a "sworn transcript of account" as evidence. They argue, second, that the circuit court erred in denying the Metzes's pretrial motion to compel production of a "detailed ledger" or "transcript of account" recording the account activity for the line of credit, Loan 1067. They argue, third, that the circuit court applied a penalty rate of interest that was contrary to law.

Because the circuit court's judgment order was entered upon a bench trial, we review it as follows:

1

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

Petitioners' first and second assignments of error address the evidence underlying the circuit court's judgment on the line of credit that the bank extended to the Metzes. We must contemplate two concerns about this evidence. The first is the Metzes's claim that the circuit court erred when it did not apply forty-five year-old precedent from the United States Court of Appeals for the Fifth Circuit to require the production of a "sworn transcript of account" as prerequisite to judgment, which is reviewed under the standard set forth above.[1] The second, centered on the Metzes's assertion that the circuit court erred in denying their motion to compel discovery responses (specifically, a "detailed ledger" or "transcript of account"), is reviewed with the following consideration: "A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration." Syl. Pt. 2, in part, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Marks*, 230 W. Va. 517, 741 S.E.2d 75 (2012) (quoting Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W. Va. 463, 475 S.E.2d 555 (1996)).

With respect to both of these assignments of error, we note that the parties' trial counsel espoused dueling ideas about loan records maintained in the course of bank business. Throughout discovery and over the course of an ongoing dispute about production, the bank maintained that it had "produced the loan file" in response to discovery requests. Nevertheless, the Metzes continued

---

[1] The Metzes argue that the circuit court failed to uphold this standard:

> We hold that the court erred in holding the Government to such a burden of [proving all credits applied, and showing how all credits were allocated] and in dismissing the suit, for the Government's prima facie case was clearly established by introduction of the note, the guaranty, and the sworn transcript of account. *See Southern Glass and Builders Supply Co. v. United States*, 398 F.2d 109 (5th Cir. 1968).

*United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975). We are not, of course, bound by this federal precedent. We note, however, that it does not bode in the Metzes's favor. First, it does not establish the "requirement" that the Metzes suggest, but rather confirms that a sworn transcript of account was sufficient, with the note and guaranty, in that isolated case, to establish a prima facie case of an obligation. Second, this dicta would relieve a litigant of the burden of establishing their allocation of credits to accounts (a burden that the Metzes have urged us to apply here) unless the prima facie case was met with rebuttal evidence.

to demand "the ledger" or "detailed loan history statements" or "[c]redit files" or such. The circuit court entered an order reflecting its finding that the bank had provided all relevant loan documents. Immediately preceding trial, the Metzes's counsel represented to the court that they had received only "a note, a note, and ledgers." Yet, here we find ourselves addressing an assignment of error wherein the Metzes argue that the document purporting to be a ledger was, in their words, "nonsense." Having extensively reviewed the detailed accounting history that was provided in discovery and ultimately considered by the circuit court, and having thoroughly reviewed the trial testimony of Sam Vallandingham, the bank's president and chief executive officer, we find that the bank produced documents that reflected the loan balances, payments, draws and credits for both loans. Accordingly, we find no error.

We now turn to the Metzes's third assignment of error, wherein they argue that the circuit court's application of the contractual default interest rate increase to 18% effectively penalized the Metzes and was, thus, improper. Because the interest rate increase was occasioned upon an event contemplated by contract, we proceed with respect for the parties' agreement.

> "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. Pt. 1, *Hatfield v. Health Mgmt. Assoc. of West Virginia*, 223 W. Va. 259, 672 S.E.2d 395 (2008). In short, there is a rebuttable presumption favoring the agreed-upon contractual rate. The Metzes—after raising this issue for the first time on appeal and failing to engage in factual development on the circumstances unique to this contractual provision—would have us find an 18% rate per se unconscionable in comparison with the otherwise favorable interest rates that the Metzes enjoyed over the life of the loans. This is an insufficient basis on which to nullify a contractually-based default interest rate provision. Accordingly, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISQUALIFIED:**

Chief Justice Tim Armstead